**CASE No. 25-2109**

---

**UNITED STATES COURT OF APPEALS**
**FOR THE FIRST CIRCUIT**

---

TRACY GRYGIEL,

Plaintiff-Appellant

V.

HEALTHEQUITY, INC.,

Defendant-Appellee

---

APPEAL FROM THE JUDGMENT AND ORDER OF THE DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS

---

# Brief of Defendant-Appellee, HealthEquity, Inc.

---

Date: 03/04/2026

Jennifer L. Markowski, BBO #655927
Freeman Mathis & Gary, LLP
One Boston Place
201 Washington Street, Suite 2200
Boston, MA 02108
(617) 807-8962
jennifer.markowski@fmglaw.com

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1, Defendant-Appellee, HealthEquity, Inc., hereby submits this Corporate Disclosure Statement. HealthEquity is not owned by a parent corporation and no publicly held corporation owns 10% or more of HealthEquity's stock.

# TABLE OF CONTENTS


**TABLE OF AUTHORITIES** .......... **5**

**STATEMENT OF THE CASE** .......... **7**

**I. Introduction and Procedural Background** .......... **7**

**II. Pertinent Facts Alleged in Grygiel's Amended Complaint** .......... **8**

a. Grygiel is Hired as a Senior Data Architect .......... 8

b. Grygiel Allegedly Reports Security and Privacy Issues .......... 8

c. Grygiel's Allegations Concerning Adverse Treatment .......... 10

d. Grygiel Emails HealthEquity Documents to her Personal Email and is Subsequently Terminated for Policy Violations .......... 11

**SUMMARY OF ARGUMENT** .......... **12**

**STANDARD OF REVIEW** .......... **14**

**ARGUMENT** .......... **16**

**I. The District Court Properly Dismissed Grygiel's Gender Discrimination Claims Under M.G.L. c. 151B (Count I) and Title VII (Count II)** .......... **16**

a. Applicable Legal Standard for Claims of Gender Discrimination Under M.G.L. c. 151B § 4(1) and Title VII, 42 U.S.C. § 2000e-2(a) .......... 16

b. Alleged Feedback that Grygiel was a "Know it All" and Did Not "Stay in [Her] Lane" is not Evidence of Gender-Based Animus .......... 17

c. Alleged Comments by Non-Decision Makers do not Support a Finding of Gender-Based Animus .......... 18

d. Grygiel's Allegations Concerning the Individual Who Made the Decision to Terminate Her are Conclusory or Lack Any Air of Gender-Based Animus .......... 19

**II. The District Court Properly Dismissed Grygiel's Retaliation Claims Under M.G.L. c. 151B (Count III) and Title VII (Count IV)........................................................ 21**

a. Applicable Legal Standard for Claims of Retaliation Under M.G.L. c. 151B § 4(4) and Title VII, 42 U.S.C. 2000e-3(a)........................................................ 21

b. Grygiel did not Engage in Protected Conduct by Sending Company Documents to her Personal Email in a Purported Effort to Preserve Evidence of Potential Legal Claims Against HealthEquity.................................. 23

c. Grygiel has not Plead Facts Sufficient to Plausibly Establish a Casual Connection between her Alleged "Self-Help Discovery" and her Termination.................. 26

**III. The District Court Properly Dismissed Grygiel's Wrongful Termination in Violation of Public Policy Claim (Count VI) ........................................................ 28**

a. Grygiel has Not Demonstrated that Firing an Employee for Internally Reporting Potential Future HIPAA Violations is Contrary to Well-Defined Public Policy................ 28

b. There is No Causal Connection between Grygiel's Alleged Report of Potential Future HIPAA Violations in June 2023 and her Termination in May 2024......................... 33

**CONCLUSION........................................................ 35**

**CERTIFICATE OF COMPLIANCE WITH RULE 32(g)(1)................... 36**

**CERTIFICATE OF SERVICE........................................ 37**

# TABLE OF AUTHORITIES

**Cases:**

Allder v. Daniel O'Connell's Sons, 20 F. Supp. 2d 210 (D. Mass. 1998) .......... 19
Alvarado v. Donahoe, 687 F.3d 453 (1st Cir. 2012) .......... 27
Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86 (1st Cir. 1996) .......... 19
Beal v. Board of Selectman of Hingham, 419 Mass. 535, 646 N.E.2d 131 (1995) .......... 17
Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) .......... 14
Brissette v. Franklin County Sheriff's Office, 235 F.Supp.2d 63 (D. Mass. 2003) .......... 27
Brunner v. Stone & Webster Engineering Corp., 413 Mass. 698, 603 N.E.2d 206 (1992) .......... 17
Calero-Cerezo v. U.S. Dep't of Just., 355 F.3d 6 (1st Cir. 2004) .......... 24
Carrero-Ojeda v. Autoridad de Energía Eléctrica, 755 F.3d 711 (1st Cir. 2014) .......... 14, 15
Centro Medico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1 (1st Cir. 2005) .......... 14
Chi Sang Poon v. Massachusetts Institute of Technology, 74 Mass. App. Ct. 185, 905 N.E.2d 137 (2009) .......... 33
Colon-Fontanez v. Municipality of San Juan, 660 F.3d 17 (1st Cir.2011) .......... 24
Dube v. Middlesex Corp., 59 Mass. App. Ct. 734, 797 N.E.2d 925 (2003) .......... 34
Durbeck v. Suffolk Univ., 547 F. Supp. 3d 133 (D. Mass. 2021) .......... 21
Dziamba v. Warner & Stackpole, LLP, 56 Mass. App. Ct. 397, 778 N.E.2d 927 (2002) .......... 20, 21
Frieze v. Boatmen's Bank of Belton, 950 F.2d 538 (8th Cir. 1991) .......... 19
Gagliardi v. Sullivan, 513 F.3d 301 (1st Cir. 2008) .......... 14
Germanowski v. Harris, 854 F.3d 68 (1st Cir. 2017) .......... 14, 15
Gichuhi v. Alt Supports, Inc., 90 Mass. App. Ct. 1104, 57 N.E.3d 1066 (Mass. App. Ct. 2016) (unpublished) .......... 29, 32
Hazel v. U.S. Postmaster General, 7 F.3d 1 (1st Cir.1993) .......... 27
Jefferies v. Harris County Community Action Ass'n, 615 F.2d 1025 (5th Cir.1980) .......... 24
Lewis v. Gillette Co., 22 F.3d 22 (1st Cir. 1994) .......... 27
McDonnell Douglas v. Certified Engineering & Testing Co., Inc., 899 F. Supp. 739 (D. Mass. 1995) .......... 16
McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) .......... 15, 16
McMillan v. Mass. Soc'y for Prevention of Cruelty to Animals, 140 F.3d 288 (1st Cir. 1998) .......... 19

Medina-Munoz v. R.J. Reynolds Tobacco, Co., 896 F.2d 5 (1st Cir. 1990) .......... 17
Murray v. Warren Pumps, LLC, 821 F. 3d 77 (1st Cir. 2016)..... 29
Navarro v. U.S. Tsubaki, Inc., 577 F.Supp.2d 487 (2008)........ 27
Nedder v. UMass Mem'l Health Care, Inc., 772 F. Supp. 3d 87 (D. Mass. 2025) .......... 23
Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1 (1st Cir. 2011).......... 14
O'Day v. McDonnell Douglas Helicopter Co., 79 F.3d 756 (9th Cir. 1996) .......... 24, 25
Penalbert-Rosa v. Fortuno-Burset, 631 F.3d 592 (1st Cir. 2011) .......... 14
Pomales v. Celulares Telefonica, Inc., 447 F.3d 79 (1st Cir. 2006).......... 27
Psy-Ed Corp. v. Klein, 459 Mass. 697, 947 N.E.2d 520 (Mass. 2011).......... 22
Rae v. Woburn Pub. Sch., 113 F.4th 86 (1st Cir. 2024), cert. denied, 145 S. Ct. 1431 (2025) .......... 22
Rios-Jimenez v. Principi, 520 F.3d 31 (1st Cir. 2008) ......... 18
Rodriguez-Reyes v. Molina-Rodriguez, 711 F.3d 49 (1st Cir. 2013) .......... 15
Rodriguez-Vives v. P.R. Firefighters Corps of P.R., 743 F.3d 278 (1st Cir. 2014) .......... 28
Sepulveda-Vargas v. Caribbean Rests., LLC, 888 F.3d 549 (1st Cir. 2018) .......... 22
Silver v. KCA, Inc., 586 F.2d 138 (9th Cir.1978) ............ 24
Smith-Pfeffer v. Superintendent of the Walter R. Fernald State School, 404 Mass. 145, 533 N.E.2d 1368 (1989) ............ 29, 31
Straughn v. Delta Air Lines, Inc., 250 F.3d 23 (1st Cir. 2001) .......... 19
Surprise v. Innovation Group, Inc. / First Notice Systems, Inc., 925 F. Supp. 2d. 134 (D. Mass. 2013) .......... 29, 32
Thompson v. Coca-Cola Co., 522 F. 3d 168 (1st Cir. 2008)....... 17
Verdrager v. Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C., 474 Mass. 382, 50 N.E.3d 778 (2016) .......... 24
Wright v. Shriners Hosp. for Crippled Children, 412 Mass. 469, 589 N.E.2d 1241 (1992) .......... 28, 32

**Statutes:**

45 C.F.R. § 160.316 (b)-(c).......... 30
42 U.S.C. § 2000e-2(a).......... 16
42 U.S.C. § 2000e-3(a).......... 22
M.G.L. c. 151B § 4(1).......... 16
M.G.L. c. 151B § 4(4).......... 22
M.G.L. c. 214 § 1B.......... 30

## STATEMENT OF THE CASE

### I. Introduction and Procedural Background.

This matter arises from HealthEquity's decision to terminate Grygiel's employment approximately one year after her hire. During her employment she was placed on two performance improvement plans ("PIP") and was terminated during the pendency of her second PIP for violating HealthEquity security and other policies.

On August 11, 2025, Grygiel filed the operative Amended Complaint in the United States District Court for the District of Massachusetts, (Appendix, 5), asserting claims of gender discrimination under M.G.L. c. 151B (Count I) and Title VII (Count II), claims of retaliation under M.G.L. c. 151B (Count III) and Title VII (Count IV), interference under M.G.L. c. 151B (Count V), and wrongful discharge in violation of public policy (Count VI). (Appendix, 11-31). On October 14, 2025, the District Court (Burroughs, J.) issued a Memorandum and Order granting HealthEquity's Motion to Dismiss the Amended Complaint in its entirety finding Grygiel had failed to allege facts sufficient to plausibly support an entitlement to relief on any claims. (Addendum to Appellate Brief, 2-21). Grygiel appealed the District Court's dismissal of Counts I – IV and VI.

## II. Pertinent Facts Alleged in Grygiel's Amended Complaint.[1]

a. Grygiel is Hired as a Senior Data Architect.

Tracy Grygiel was hired as a Senior Data Architect by HealthEquity a provider of health benefit plans, including health savings accounts (HSA), in May 2023 following an interview with Darek Easterly ("Mr. Easterly"). (Appendix, 12 at ¶¶ 3, 8; Appendix, 13 at ¶ 12). Grygiel alleges after her interview, Mr. Esterly told her that out of hundreds of applicants, she was the first applicant to impress him. (Appendix, 13 at ¶ 14). Mr. Easterly was Grygiel's direct supervisor for the entirety of her employment at Health Equity. Appendix, 13 at ¶ 12).

b. Grygiel Allegedly Reports Security and Privacy Issues.

Grygiel alleges in or around May to June of 2023, she performed an audit of "HealthEquity's Oracle 19c RAC Replicated Database" at the instruction of Mr. Easterly. (Appendix, 13 at ¶ 15). She alleges the database failed the audit, and she found it was "ripe for attack and especially vulnerable to insider threats." (Appendix, 13 at ¶ 16). HealthEquity's practices relating to shared

---

[1] Grygiel's Appellate Brief notes she is not appealing the dismissal of Count V of her Amended Complaint, her claim of interference under M.G.L. c. 151B. (Appellate Brief, 15 at n. 2). Nevertheless, Grygiel's Statement of the Case in her Appellate Brief includes allegations of alleged interference with potential job prospects since her employment termination. (See id. at 14-15). These allegations have no bearing on the causes of action that are the subject of Grygiel's appeal and are irrelevant to this Court's analysis.

passwords and shared accounts, according to Grygiel, violated the recommendations of the "SANS Technology Institute." (Appendix, 14 at ¶¶ 17-19). She further alleges that, due to improper restrictions and lack of database access controls, there was potential for unrestricted access to sensitive data. (Appendix, 14 at ¶¶ 20).

According to Grygiel, she "immediately sent Easterly a copy of the failed Security Audit Report", who "dismissed her concerns," "assured her that the existing security measures on HealthEquity's application would protect the important data," and "refused to discuss the matter of the failed security audit" further. (Appendix, 15 at ¶¶ 21, 24, 25, 26). Grygiel describes Mr. Easterly's reaction as "dismissive condescension and hostility to [her] identification of security noncompliance issues…." (Appendix, 15 at ¶ 28).

Grygiel further alleges that, in the course of her work responsibilities, she reported numerous vulnerabilities in HealthEquity's security measures that, if unremedied, could have brought HealthEquity out of compliance with the federal Health Insurance Portability and Accountability Act's ("HIPAA") Security Rule and Privacy Rule. (Appendix, 16 at ¶ 33; Appendix, 17 at ¶ 35). Grygiel concludes that, because she reported these "significant security and privacy issues," HealthEquity retaliated against her throughout her employment. (Appendix, 7 at ¶ 37).

c. <u>Grygiel's Allegations Concerning Adverse Treatment</u>.

Grygiel alleges that Mr. Easterly treated her adversely. Specifically, she contends he placed her on a performance improvement plan ("PIP") on July 21, 2023, that was without merit. (Appendix, 18 at ¶ 44). She contends that in November 2023, Mr. Easterly began excluding her from team meetings and instructed her she was not allowed to speak during meetings she was invited to. (Appendix, 19 at ¶¶ 53, 54). She further alleges in or around December 2023, Mr. Easterly informed her that her bonus would be $3,000, which was less than she expected based on her offer letter. (Appendix, 20 at ¶ 56).

According to Grygiel, a Project Manager at HealthEquity, Ajay Sahu ("Mr. Sahu"), called her a "token woman" and "Miss Know-It-All." (Appendix, 17 at ¶ 40). Mr. Sahu allegedly repeated these statements in public spaces without objection from co-workers. (Appendix, 18 at ¶ 41). Grygiel also alleges unidentified "male colleagues" called her "token woman" and "Miss Know-It-All." (Appendix, 20 at ¶ 55).

On April 19, 2024, Mr. Easterly and Jordan Griggs ("Ms. Griggs"), HealthEquity's Vice President of Human Resources, presented Ms. Grygiel with a second PIP. (Appendix, 23 at ¶ 76). During the meeting in which the second PIP was presented, Ms. Griggs purportedly told her that "the chief complaint is that

you're a know-it-all and will not stay in your lane." (Appendix, 23 at ¶ 81).

d. Grygiel Emails HealthEquity Documents to Her Personal Email and is Subsequently Terminated for Policy Violations.

Grygiel alleges by late April 2024, she believed HealthEquity was discriminating and retaliating against her, so "[t]o preserve evidence for potential claims," she "sent copies of her First and Second PIPs, training certifications she had earned, and important email correspondence to her personal email address." (Appendix, 23 at ¶ 83). Grygiel alleges HealthEquity discovered the emails she forwarded to her personal email address, and, on April 30, 2024, "brought Grygiel into a meeting where they made her delete the emails and performance-related documents she had sent to herself." (Appendix, 24 at ¶ 85). Grygiel alleges HealthEquity then placed her on Paid Administrative Leave pending an investigation. (Appendix, 24 at ¶ 86). Ultimately, Grygiel's employment was terminated on May 7, 2024. (Appendix, 24 at ¶¶ 87). Grygiel alleges Ms. Griggs told her that her termination was due to her violating HealthEquity's Security and People policy. (Appendix, 24 at ¶ 87).

## SUMMARY OF THE ARGUMENT

The District Court judge correctly dismissed all counts of the Amended Complaint. Grygiel has failed to plausibly state any entitlement to relief under M.G.L. c. 151B § 4(1) and 42 U.S.C. § 2000e-2(a) for her claims of gender discrimination. *Infra*, pg. 16. Grygiel's allegations, viewed in the light most favorable to her, do not support a plausible finding of gender-based animus. Id. at 17-21. Alleged statements that Grygiel was a "know it all" and did not "stay in [her] lane" are not gender-based comments that support a finding of gender animus. Id. at 17. Further, alleged comments by individuals who did not decide to terminate Grygiel's employment do not support a finding of gender animus by those who terminated her. Id. at 18. Finally, the majority of Grygiel's allegations concerning her supervisor, Derek Easterly, are conclusory. Id. at 19. Any allegations concerning Mr. Easterly that are non-conclusory, such as the allegation that he issued Performance Improvement Plans to Grygiel, lack gender animus. Id. at 20-21.

The District Court judge correctly dismissed Grygiel's retaliation claims under M.G.L. c. 151B § 4(4) and Title VII, 42 U.S.C. 2000e-3(a) for several reasons. *Infra* at 21. First, Grygiel did not engage in the requisite protected conduct necessary for a claim of retaliation when she sent company documents to her personal email in a purported effort to preserve evidence of potential legal claims against HealthEquity. Id. at 23. Even if

this Court determines Grygiel engaged in protected conduct, her retaliation claims still fail because Grygiel has not alleged she told HealthEquity she forwarded documents to her personal email to support a potential legal claim against the Company. Id. at 26. No reasonable person could conclude that sending personnel documents and emails was, on its face, an action taken to support a future claim of gender discrimination. Id. at 26-27. As such, HealthEquity lacked the requisite knowledge of protected conduct to take an adverse action in response to such conduct. Id. Accordingly, the facts alleged fail to plausibly establish a causal connection between Grygiel's purported protected conduct and HealthEquity's termination decision. Id. at 28.

Finally, the District Court judge properly dismissed Grygiel's wrongful termination in violation of public policy claim because Grygiel has not demonstrated that firing an employee for internally reporting potential future HIPAA violations is contrary to well-defined public policy. *Infra* at 28. As set forth herein, HIPAA does not constitute such a well-defined public policy as to entitle Grygiel to the protection of the wrongful termination doctrine, which is a narrow exception to the at-will employment doctrine. Id. at 28-33. Furthermore, there is no causal connection between Grygiel's alleged report of potential HIPAA violations in June 2023 and her termination 11 months later in May 2024. Id. at 33-34.

**STANDARD OF REVIEW**

The Court reviews orders granting motions to dismiss under Rule 12(b)(6) de novo. See Germanowski v. Harris, 854 F.3d 68, 71 (1st Cir. 2017) (citing Carrero-Ojeda v. Autoridad de Energía Eléctrica, 755 F.3d 711, 717 (1st Cir. 2014)). "In undertaking this review, [the court] ask[s] whether the well-pleaded factual allegations, viewed in the light most favorable to the plaintiff, state a claim for which relief can be granted." See Germanowski, 854 F.3d at 71 (citing Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 7 (1st Cir. 2011)). The alleged facts must sufficiently "state a claim for relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Although well-pleaded facts must be accepted as true, speculation does not equate to fact. See Penalbert-Rosa v. Fortuno-Burset, 631 F.3d 592, 596 (1st Cir. 2011). "[D]etailed allegations are not required, but the complaint must set forth "more than labels and conclusions," Twombly, 550 U.S. at 555, and must contain "factual allegations, either direct or inferential, respecting each element necessary to sustain recovery under some actionable legal theory." Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008) (internal quotations omitted) (quoting Centro Medico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 6 (1st Cir. 2005)).

In an employment discrimination lawsuit, while "[i]t is not necessary to plead facts sufficient to establish a prima facie

case at the pleading stage[,] this does not mean that the elements of the prima facie case are irrelevant to a plausibility determination in a discrimination suit... Those elements are a part of the background against which a plausibility determination should be made." Germanowski, 854 F.3d at 71 (quoting Rodriguez-Reyes v. Molina-Rodriguez, 711 F.3d 49, 54 (1st Cir. 2013)). Therefore, a court should consider the elements of a prima facie case, which serve as a useful prism to assess the plausibility of a plaintiff's claim. See Carrero-Ojeda, 755 F.3d at 719 (alteration in original) (quoting Rodriguez-Reyes, 711 F.3d at 54).[2]

[2] Grygiel incorrectly contends the District Court judge failed to apply the plausibility standard in evaluating Grygiel's gender discrimination and retaliation claims. (Appellate Brief, 20-24, 32-33). The District Court judge's Memorandum and Order clearly articulates that Grygiel need not plead facts sufficient to establish a prima facie case at the pleading stage using the plausibility standard. (Addendum to Appellate Brief, 11). The District Court judge also acknowledged that allegations are to be taken in sum when considering whether a claim is plausible. (Id. at 11, 15). However, the District Court judge also correctly applied the principle that the elements of the prima facie case may be used as a prism to evaluate the plausibility of gender discrimination and retaliation claims. (Id. at 11). The District Court judge considered Grygiel's allegations in their totality and in the light most favorable to her, analyzed said allegations using the McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) analysis as a prism, and concluded that the allegations were not sufficient to plausibly establish the claims of gender discrimination and retaliation. (Id. at 11-12, 15-16). Thus, the record establishes that the District Court judge correctly applied the plausibility standard and Grygiel's allegations otherwise are not supported by the record.

## ARGUMENT

### I. The District Court Correctly Dismissed Grygiel's Gender Discrimination Claims.

#### a. Applicable Legal Analysis for Claims of Gender Discrimination Under M.G.L. c. 151B § 4(1) and 42 U.S.C. § 2000e-2(a).

Grygiel's threadbare allegations concerning alleged gender discrimination do not sufficiently state a claim for which relief may be granted under M.G.L. c. 151B or Title VII, 42 U.S.C. § 2000e et seq. The Massachusetts anti-discrimination statute, Chapter 151B, makes it unlawful:

> For an employer, by himself or his agent, because of the race, color, religious creed, national origin, sex, sexual orientation, … or ancestry of any individual … to discharge from employment such individual or to discriminate against such individual in compensation or in terms, condition or privileges of employment, unless based upon a bona fide occupational qualification.

M.G.L. c. 151B § 4(1). Similarly, federal law, Title VII, provides:

> It shall be an unlawful employment practice for an employer – (1) … to discharge any individual, or otherwise to discrimination against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]

42 U.S.C. § 2000e-2(a). Because the analysis of a [gender] discrimination claim is essentially the same under the State and Federal statutes," the First Circuit and the Massachusetts Supreme Judicial Court have historically combined their "discussion of both [Title VII] and [Chapter 151B] claims." McDonnell Douglas v. Certified Engineering & Testing Co., Inc., 899 F. Supp. 739, 745

(D. Mass. 1995) (quoting Beal v. Board of Selectman of Hingham, 419 Mass. 535, at 544 n. 5, 646 N.E.2d 131, 138 n. 5 (1995)). Under either statute, to sufficiently state a claim for gender discrimination Grygiel must allege facts sufficient to plausibly state: (1) she is a member of a protected class, (2) she was subjected to an adverse employment action, and (3) HealthEquity "harbored discriminatory animus, which was the determinative cause of the adverse action." Thompson v. Coca-Cola Co., 522 F. 3d 168, 176 (1st Cir. 2008). Importantly, discriminatory conduct perpetrated by coworkers who had no part in the challenged employment actions is not probative of the ultimate question of discrimination. See Brunner v. Stone & Webster Engineering Corp., 413 Mass. 698, 704, 603 N.E.2d 206, 210 (1992) (noting series of alleged harassing incidents involving co-workers rather than decision-makers did not support an inference of discriminatory intent); see also Medina-Munoz v. R.J. Reynolds Tobacco, Co., 896 F.2d 5, 10 (1st Cir. 1990) ("[t]he biases of one who neither makes nor influences the challenged personnel decisions are not probative in an employment discrimination case.").

**b. Alleged Feedback that Grygiel was a "Know it All" and Did Not "Stay in [Her] Lane" is not Evidence of Gender-Based Animus.**

Grygiel alleges that three (3) weeks before she was terminated, her supervisor, Darek Easterly, and HealthEquity's Vice President of Human Resources, Jordan Griggs, presented her

with a second performance improvement plan ("PIP") and that during the PIP meeting Ms. Griggs told Grygiel the "chief complaint is that you're a know-it-all and will not stay in your lane." (Appendix, 23 at ¶ 81). Neither phrase, "know-it-all" or "stay in your lane," carries a negative gender-specific connotation. Both are phrases that can be fairly applied to any individual who fits the behavior, irrespective of gender. Moreover, a chief criticism of Grygiel was that she worked on tasks that were not assigned to her and did not listen to the perspectives of others. Grygiel does not allege that HealthEquity criticized similarly situated males less for doing the same things she did. Thus, even assuming for purposes of Grygiel's appeal that both phrases were used exactly as alleged, they are not evidence of gender-based discriminatory animus by Easterly or Griggs.

**c. Alleged Comments by Non-Decision Makers Do Not Support a Finding of Discriminatory Animus.**

Grygiel asserts a male coworker, Ajay Sahu, allegedly referred to her as "Miss know it all" and a "token woman" and contends these comments are evidence of gender-based animus. Because he was a coworker who was not involved in Grygiel's termination, Sahu's alleged remarks do not support an inference of discriminatory animus. See Rios-Jimenez v. Principi, 520 F.3d 31, 40 (1st Cir. 2008) ("Direct evidence of discrimination 'does not include stray remarks in the workplace, particularly those made by

nondecisionmakers....") (quoting Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 96 (1st Cir. 1996)); Straughn v. Delta Air Lines, Inc., 250 F.3d 23, 36 (1st Cir. 2001) (noting "probativeness [of stray remarks] is circumscribed if they were made in a situation temporally remote from the date of the employment decision, or … were not related to the employment decision in question, or were made by nondecisionmakers") (emphasis omitted) (quoting McMillan v. Mass. Soc'y for Prevention of Cruelty to Animals, 140 F.3d 288, 301 (1st Cir. 1998)); Allder v. Daniel O'Connell's Sons, 20 F. Supp. 2d 210, 217 (D. Mass. 1998) (stray comments made outside the decision-making process are not evidence of discriminatory intent) (citing to Frieze v. Boatmen's Bank of Belton, 950 F.2d 538, 541 (8th Cir. 1991) (various employees made statements, but because they did not take part in the decision to discharge the statements could not support an inference of discrimination). The only conduct relevant to the Court's analysis is that of Easterly and Griggs, as they were the decision makers.

**d. Grygiel's Allegations Concerning Her Supervisor are Conclusory and Lack Any Suggestion of Gender-Based Animus.**

Grygiel fails to tie her termination to any acts or statements suggesting Mr. Easterly harbored gender-based discriminatory animus. Instead, Grygiel makes conclusory assumptions about Mr. Easterly's alleged behavior, which include that he "reacted with dismissive condescension and hostility to [her] identification of

security noncompliance issues" (Appendix, 15 at ¶ 28), and he treated her with "nonchalance, passive aggression, ridicule, and retaliatory treatment" (Appendix, 17 at ¶ 38). She also alleges that Mr. Easterly put her on a PIP in July 2023 (Appendix, 18 at ¶ 44) and began "excluding her from team meetings" and/or "instructed [her] that she was not allowed to speak during the meeting," (Appendix, 19 at ¶ 53; Appendix, 20 at ¶ 54), he informed her that her 2023 bonus would be reduced because she had not done any work that year to merit the bonus (Appendix 20, at ¶¶ 56-58), and he presented her with a second PIP in April 2024 and told her she could accept the second PIP or resign from the company (Appendix, 23 at ¶¶ 76, 78). None of these actions, considered alone or together, suggest Mr. Easterly harbored discriminatory animus toward Grygiel.

Furthermore, Massachusetts courts have opined on the improbability of the proposition that a decisionmaker who hires, and subsequently fires, an individual in a protected group bears discriminatory animus to that group. See Dziamba v. Warner & Stackpole, LLP, 56 Mass. App. Ct. 397, 406, 778 N.E.2d 927, 934 (2002). Here, Grygiel alleges that Mr. Easterly gave her positive feedback after he interviewed and hired her, knowing she was a member of a protected class (a woman). (Appendix, 13 at ¶ 17). Approximately one year later, Grygiel was terminated, with Easterly remaining her supervisor during her entire employment.

Grygiel's Amended Complaint fails to adequately plead facts causally connecting her termination to unlawful gender discrimination where the person who hired her, and praised her, was also her supervisor at the time of her termination and there are no allegations suggesting he harbored discriminatory animus. See Dziamba, 56 Mass. App. Ct. at 406, 778 N.E.2d at 934. Based on these allegations, it would be illogical to conclude that gender motivated Mr. Easterly's alleged actions where Grygiel's gender was known to him at the time he hired her.

Absent allegations suggesting animus by her supervisor, Grygiel is left with mere labels and conclusions supporting her claim of gender discrimination. It is not enough, however, for Grygiel simply to allege that she was a woman and was terminated from her role. See Durbeck v. Suffolk Univ., 547 F. Supp. 3d 133, 138 (D. Mass. 2021) ("the court will disregard statements that merely offer legal conclusions couched as fact or threadbare recitals of the elements of a cause of action" [quotation omitted]). Therefore, the District Court properly dismissed Grygiel's gender discrimination claims.

## II. The District Court Properly Dismissed Grygiel's Retaliation Claims.

### a. Applicable Legal Analysis for Claims of Retaliation Under M.G.L. c. 151B § 4(4) and Title VII, 42 U.S.C. 2000e-3(a).

Like Grygiel's gender discrimination claims, she has failed to plead facts sufficient to suggest a plausible entitlement to

relief for her retaliation claims under state and federal law. The anti-retaliation provision of Chapter 151B, makes it unlawful:

> For any person, employer, labor organization or employment agency to discharge, expel or otherwise discriminate against any person because he has opposed any practices forbidden under this chapter or because he has filed a complaint, testified or assisted in any proceeding under section five.

M.G.L. c. 151B § 4(4). Similarly, Title VII's antiretaliation provision states:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment … because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. 2000e-3(a).

To make out a prima facie case for retaliation under both M.G.L. c. 151B and Title VII sufficient to survive a Rule 12(b)(6) motion, an employee must plausibly plead: (1) she engaged in protected conduct, (2) she was subjected to an adverse employment action, and (3) there was a causal connection between her protected conduct and the adverse employment action. See Rae v. Woburn Pub. Sch., 113 F.4th 86, 100 (1st Cir. 2024), cert. denied, 145 S. Ct. 1431 (2025); see also Sepulveda-Vargas v. Caribbean Rests., LLC, 888 F.3d 549, 555 (1st Cir. 2018) (Title VII); Psy-Ed Corp. v.

Klein, 459 Mass. 697, 707, 947 N.E.2d 520, 530 (Mass. 2011) (Chapter 151B).

**b. Grygiel did not Engage in Protected Conduct by Sending Company Documents to her Personal Email in a Purported Effort to Preserve Evidence of Potential Future Legal Claims Against HealthEquity.**

Grygiel alleges that "to preserve evidence of potential claims" she sent herself copies of her first and second PIPs, training certifications she had earned, and "important email correspondence to her personal email address." (Appendix, 23 at ¶ 83). She then alleges when HealthEquity discovered that she sent herself these emails, the company "conveniently exploited, deliberately misconstrued, and exaggerated [her] self-help discovery efforts as alleged policy violations" and then terminated her following an investigation and "determination that she violated HealthEquity's Security and People Policy. (Appendix, 24 at ¶ 87).[3] Grygiel's Amended Complaint contains no factual

[3] The Introduction (Section I) of Grygiel's Amended Complaint states "Health Equity ultimately terminated Grygiel's employment... for reporting HealthEquity's non-compliance with HIPAA (*sic*) regulations...." (Appendix, 11). Curiously, this section of the Amended Complaint makes no mention of Grygiel's purported "self-help discovery" on which she hangs her retaliation claims. Regardless, internal reporting of non-compliance with a regulation does not constitute protected activity, which must include an employee's opposition of a discriminatory or unlawful practice by their employer. See Nedder v. UMass Mem'l Health Care, Inc., 772 F. Supp. 3d 87, 95 (D. Mass. 2025) (finding plaintiff did not engage in protected activity by opposing defendant employer's COVID-19 vaccination policy because it did not put defendant on notice that she believed a discriminatory or unlawful practice was occurring). Further, Grygiel alleges she reported non-compliance with HIPAA regulations in June 2023, eleven (11)

allegations that she ever told HealthEquity she sent herself documents "to preserve potential claims."

The Massachusetts Supreme Judicial Court has noted that the protections of self-help discovery are limited "only to employees pursuing claims under G.L. c. 151B" and "protection is afforded only to those acts determined to be reasonable under the circumstances." Verdrager v. Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C., 474 Mass. 382, 411, 50 N.E.3d 778, 804 (2016). While the First Circuit has not addressed the concept of self-help discovery under Title VII, other federal circuits have considered whether similar activities are protected under Title VII's opposition clause, and have similarly held that an employee's opposition activity is protected only if it is "reasonable in view of the employer's interest in maintaining a harmonious and efficient operation.'" O'Day v. McDonnell Douglas Helicopter Co., 79 F.3d 756, 763 (9th Cir. 1996); see also Silver v. KCA, Inc., 586 F.2d 138, 141 (9th Cir.1978); Jefferies v. Harris County Community

---

months before her employment termination in May 2024. (Appendix, 16-17 at ¶¶ 34-36; Appendix 30, at ¶ 136). An eleven (11) month period between alleged protected activity and an adverse action is too attenuated to establish a causal connection based on temporal proximity. See Colon-Fontanez v. Municipality of San Juan, 660 F.3d 17, 43 (1st Cir.2011) ("[A] near twelve month passage of time between the asserted protected conduct and alleged adverse action weighs against a finding of causality"); see also Calero-Cerezo v. U.S. Dep't of Just., 355 F.3d 6, 25 (1st Cir. 2004) (noting three and four month periods insufficient to establish causal connection).

Action Ass'n, 615 F.2d 1025, 1036 (5th Cir.1980). In O'Day, the United States Court of Appeals for the Ninth Circuit noted:

> In balancing an employer's interest in maintaining a "harmonious and efficient" workplace with the protections of the anti-discrimination laws, we are loathe to provide employees an incentive to rifle through confidential files looking for evidence that might come in handy in later litigation. The opposition clause protects reasonable attempts to contest an employer's discriminatory practices; it is not an insurance policy, a license to flaunt company rules or an invitation to dishonest behavior.

79 F.3d at 763-64. The Ninth Circuit ultimately concluded that the plaintiff-employee did not engage in protected activity when he stole sensitive personnel documents to preserve evidence for his future lawsuit against the defendant-company. See id. at 762, 764.

Here, Grygiel forwarded herself copies of her first and second PIPs, training certifications she had earned, and "important email correspondence to her personal email address." (Appendix, 23 at ¶ 83). Grygiel alleges she did this "to preserve evidence of potential claims," and, as such, she had not yet actually asserted a legal claim against HealthEquity. Grygiel further alleges in her Amended Complaint that when HealthEquity discovered that she forwarded documents and emails to her personal email, HealthEquity placed her on Paid Administrative Leave pending an investigation. (Appendix, 24 at ¶¶ 85-86). HealthEquity determined that she violated the Company's Security and People policy. (Appendix, 24 at ¶¶ 86-87). Under the circumstances, Grygiel's actions in

forwarding personnel records and "important email correspondence" to herself, prior to any legal action against HealthEquity, was unreasonable. There is no reason to suspect that personnel documents, such as a PIP, would not be preserved such that Grygiel could reasonably send said documents to herself due to document destruction concerns. She cannot label her conduct "self-help discovery" to avoid the consequences of violating company policy. Where Grygiel's actions do not constitute protected conduct under Chapter 151B and Title VII, her allegations fail to plausibly state an entitlement to relief.

**c. Grygiel has not Pled Facts Sufficient to Plausibly Establish a Causal Connection between her Alleged "Self-Help Discovery" and her Termination.**

Grygiel's retaliation claim fails because the facts alleged fail to establish a causal connection between her purported protected conduct and HealthEquity's termination decision. More specifically, Grygiel has not alleged she told HealthEquity she forwarded documents to her personal email to support a potential claim of discrimination against the Company.

"Incorporated into the third element [of the three preliminary elements of a retaliation claim] is the requirement that the plaintiff show that the defendant had knowledge of the protected conduct. If the defendant did not know that the plaintiff undertook conduct that was protected, then any subsequent adverse employment action cannot be linked to the protected

conduct." Navarro v. U.S. Tsubaki, Inc., 577 F.Supp.2d 487, 500-01 (2008) (citing Hazel v. U.S. Postmaster General, 7 F.3d 1, 3 (1st Cir.1993); Brissette v. Franklin County Sheriff's Office, 235 F.Supp.2d 63, 93 (D. Mass. 2003)). The First Circuit has noted "[t]he reasons underlying such a requirement are obvious: if a supervisor or other employee is unaware of the fact that a plaintiff engaged in protected conduct, any actions attributable to him could not plausibly have been induced by retaliatory motives." Alvarado v. Donahoe, 687 F.3d 453, 459 (1st Cir. 2012). To establish causation, "at a minimum, there must be competent evidence that the alleged retaliators knew of the plaintiff's protected activity and that a retaliatory motive played a part in the adverse employment actions alleged." Lewis v. Gillette Co., 22 F.3d 22, 24 (1st Cir. 1994) (internal citations omitted). Further, while temporal proximity may create an inference of causation, such an inference cannot be drawn if the decisionmaker did not know of a plaintiff's protected activity when they decided to take adverse employment action. See Pomales v. Celulares Telefonica, Inc., 447 F.3d 79, 85 (1st Cir. 2006) (internal citations omitted).

Here, Grygiel alleges HealthEquity discovered she forwarded documents to her personal email address, but she does not allege that she *told* HealthEquity that she forwarded documents to herself "to preserve evidence of potential claims." While Grygiel alleges in Counts III and IV of her Amended Complaint that HealthEquity

"knew or should have known that [her] self-help discovery was intended to further potential claim of gender discrimination" (Appendix, 28 at ¶ 120; Appendix 29, at ¶ 125), this conclusory statement is unsupported by any facts. Grygiel does not allege that she (or anyone else) told HealthEquity that the documents were emailed to support a potential discrimination claim and forwarding personnel records and other company documents is not an obvious indicator that an employee intends to engage in protected activity. Nothing can be drawn from Grygiel's factual allegations to cause a reasonable person to conclude that she was sending herself personnel documents and emails to support a gender discrimination claim. Where allegations are "so 'threadbare' that they are in essence conclusory," (Rodriguez-Vives v. P.R. Firefighters Corps of P.R., 743 F.3d 278, 286 (1st Cir. 2014), such as these, they cannot plausibly establish a causal connection.

## III. The District Court Properly Dismissed Grygiel's Wrongful Termination in Violation of Public Policy Claim (Count VI).

### a. Grygiel Has Not Demonstrated that Firing an Employee for Internally Reporting Potential Future HIPAA Violations is Contrary to Well-Defined Public Policy.

Liability for wrongful termination in violation of public policy is a narrow exception to the at-will employment doctrine that is only applicable when a plaintiff is terminated in violation of a well-defined public policy. See Wright v. Shriners Hosp. for Crippled Children, 412 Mass. 469, 472-73, 589 N.E.2d 1241, 1244

(1992). Whether a well-defined public policy has been violated is a question of law for the court to determine. See Gichuhi v. Alt Supports, Inc., 90 Mass. App. Ct. 1104, at *2, 57 N.E.3d 1066, at *2 (Mass. App. Ct. 2016) (unpublished); see also Murray v. Warren Pumps, LLC, 821 F. 3d 77, 89 (1st Cir. 2016) ("The burden lies with the at-will employee to establish that the substance of his workplace complaints for which he was discharged bears a direct connection to a sufficiently important and clearly defined public policy that warrants his protection from termination."). Generally, the wrongful termination exception may be invoked by "employees who are terminated for asserting a legally guaranteed right (e.g., filing workers' compensation claim), for doing what the law requires, (e.g., serving on a jury), or for refusing to do that which the law forbids (e.g., committing perjury)." Smith-Pfeffer v. Superintendent of the Walter R. Fernald State School, 404 Mass. 145, 149-150, 533 N.E.2d 1368, 1371 (1989). However, Massachusetts courts have not extended this doctrine "so far as to cover all acts by an employee that are directed to illegal, unsafe, or unethical conduct." See Surprise v. Innovation Group, Inc./ First Notice Systems, Inc., 925 F. Supp. 2d. 134, 148 (D. Mass. 2013).

Grygiel's wrongful termination claim is based on her allegation that she was fired because in June 2023 (11 months before her termination), she identified and reported security

concerns to HealthEquity that, if unremedied, she alleges could have brought HealthEquity's out of compliance with HIPAA's Security and Privacy Rules.[4] (Appendix, 16-17 at ¶¶ 34-36; Appendix 30, at ¶ 136). The HIPAA's Security and Privacy Rules, 45 CFR § 160 and § 164 are the only specific HIPAA sections cited by Grygiel in her Amended Complaint. (Appendix, 12 at ¶ 7). Under, 45 C.F.R. § 160.316 (b)-(c) employers are prohibited from retaliating against employees for:

> (b) Testifying, assisting, or participating in an investigation, compliance review, proceeding, or hearing under this part; or
>
> (c) Opposing any act or practice made unlawful by this subchapter, provided the individual or person has a good faith belief that the practice is unlawful, and the manner of opposition is reasonable and does not involve a disclosure of protected health information in violation of subpart E of part 164 of this subchapter.

45 C.F.R. § 160.316 (b)-(c).[5]

---

[4] Grygiel's allegations illustrate her fundamental misunderstanding of HealthEquity's legal obligations. While HealthEquity takes its various data protection and privacy obligations very seriously (with its Privacy Department, not Plaintiff's former role, leading such efforts and compliance audits), contrary to Plaintiff's allegation (Appendix, 16 at ¶32), HealthEquity is not a HIPAA Covered Entity as to its products and services.

[5] Grygiel's Amended Complaint did not cite to the specific federal regulation Grygiel believes HealthEquity violated. However, the Amended Complaint cited HIPAA's Security and Privacy Rules, 45 CFR § 160 and § 164. (Appendix, 12 at ¶ 7). HealthEquity's briefing on its Motion to Dismiss referred to 45 C.F.R. § 160.316 (b)-(c). (Appendix, 44-48). In her Opposition to HealthEquity's Motion to Dismiss, Grygiel did not dispute that she sought to invoke this regulation. (Appendix, 63-64). In Grygiel's Appellate Brief, she, for the first time, argues that Massachusetts' invasion of privacy statute, M.G.L. c. 214 § 1B, in conjunction with HIPAA (she did

Grygiel's wrongful termination claim fails because she has not alleged that her termination in May 2024 (11 months after she alleges she performed the audit and discussed the results with Mr. Easterly) was in response to either her assertion of a legally guaranteed right, doing what the law required of her, or refusing to do what the law prohibits. See Smith-Pfeffer, 404 Mass. at 149-150, 533 N.E.2d at 1371. Further, the "Specific Whistleblowing Activities" Grygiel alleges in her Amended Complaint do not constitute protected activity under 45 C.F.R. § 160.316. First, Grygiel fails to identify any act or practice of which she complained that was made "unlawful" by HIPAA (and erroneously contends that HealthEquity is a HIPAA Covered Entity as to its products and services). See § 160.316 (c). Additionally, Grygiel's alleged conduct does not fall within the protections of subpart (b) of § 160.316 because in conducting the audit, she was not "[t]estifying, assisting, or participating in an investigation, compliance review, proceeding, or hearing under this part."

---

not cite a specific HIPAA regulation), shows a public policy that supports her claim. (Appellate Brief, 39). The portion of M.G.L. c. 214 § 1B quoted by Grygiel states, "A person shall have a right against unreasonable, substantial or serious interference with his privacy. The superior court shall have jurisdiction in equity to enforce such right and in connection therewith to award damages." (Id.) Grygiel goes on to note that this statute applies to the unauthorized disclosure of medical records. (Id. at 40). Where Grygiel's Amended Complaint is devoid of any allegation that HealthEquity disclosed her (or anyone else's) health records, M.G.L. c. 214 § 1B clearly does not apply to the present matter.

Like in Surprise, the District Court correctly concluded that HIPAA did not constitute such a well-defined public policy as to entitle Grygiel to the protection of the wrongful termination doctrine. See Addendum to Appellate Brief, 20; Surprise, 925 F. Supp. 2d at 149 (granting summary judgment to employer who allegedly fired employee for reporting HIPAA violations because "the court [could not] conclude the requirements for disposal of HIPAA-protected materials w[ere] a well-defined public policy"). Notably, Grygiel acknowledges in her brief that "there are no decisions in the First Circuit or Massachusetts that directly find HIPAA to set forth a public policy specifically for Massachusetts." (Appellate Brief, 40).

Massachusetts courts routinely apply a narrow scope when addressing the breadth of the wrongful termination doctrine. Even where an employee's actions have highlighted serious potential privacy and safety concerns, courts have declined to extend the doctrine. See Surprise, 925 F. Supp. 2d. at 148 (noting wrongful termination doctrine does not cover all acts by employee addressing illegal, unsafe, or unethical conduct); Wright, 412 Mass. at 474-475, 589 N.E.2d at 1245 (opining while good medical care is in the public interest, reporting on issues potentially detrimental to healthcare does not automatically immunize healthcare workers from at-will employment doctrine); Gichuhi, 90 Mass. App. Ct. 1104 at *2, 57 N.E.3d 1066, at *2 (unpublished) (noting "internal

whistleblowing, though socially desirable, lacked the necessary level of public importance that would bring the case within the 'important public deed' category for which redress is permitted.'").

**b. There is No Causal Connection between Grygiel's Alleged Report of Potential Future HIPAA Violations in June 2023 and her Termination in May 2024.**

The District Court also correctly concluded that Grygiel failed to state a claim for wrongful termination in violation of public policy because the facts did not suggest a causal connection between her "internal reporting" of potential HIPAA violations and her termination nearly one year later. Grygiel alleges she conducted the audit in May or June of 2023 and was terminated in May 2024. (Appendix, 13 at ¶ 15; Appendix, 24, ¶ 87). In considering whether an employment decision was retaliatory, Massachusetts courts consider the temporal proximity between the alleged protected activity and the adverse action in determining whether there is a sufficient causal nexus. See Chi Sang Poon v. Massachusetts Institute of Technology, 74 Mass. App. Ct. 185, 200, 905 N.E.2d 137, 149 (2009) ("A substantial interim between the protected conduct and the alleged retaliation can stretch the inference of a causal connection to the breaking point. [A]s the elapsed time between those two events becomes greater, the inference weakens and eventually collapses." [quotation omitted]). Courts have found that nine months between the protected activity

and the adverse action to be too attenuated. See Dube v. Middlesex Corp., 59 Mass. App. Ct. 734, 740-741, 797 N.E.2d 925, 931 (2003). Here, Grygiel's allegation that her termination was somehow connected to an audit she conducted nearly a year prior is insufficient as a matter of law.

Where Grygiel has failed to plead specific facts plausibly suggesting she engaged in protected activity under 45 C.F.R. § 160.316 or that the alleged conduct of which she claims she complained is a well-defined public policy, entitling her at-will employment to additional protection, and where the time elapsed between her alleged protected activity and termination belies any causal connection, the District Court correctly dismissed her claim for wrongful termination in violation of public policy.

## CONCLUSION

The District Court judge correctly dismissed all counts of Grygiel's Amended Complaint. The District Court judge carefully considered all of Grygiel's allegations in the light most favorable to Grygiel's case and reasonably concluded that Grygiel's allegations, considered in totality, failed to plausibly state an entitlement to relief under any theory asserted. Accordingly, this Court should affirm the District Court judge's dismissal of Counts I-IV and VI of Grygiel's Amended Complaint.

Respectfully submitted,

Jennifer L. Markowski, BBO #655927
Freeman Mathis & Gary, LLP
One Boston Place
201 Washington Street, Suite 2200
(617) 807-8962
jennifer.markowski@fmglaw.com

Date: 03/04/2026

**Fed. R. App. P. 32(g)(1) Certification of Compliance**

The undersigned as counsel of record hereby certifies that this brief complies the applicable type-volume limitation. This brief was prepared using monospaced Courier New font, size 12, 1-inch margins, no more than 10.5 characters per inch. The undersigned ascertained that, excluding the items excluded from length per Fed. R. App. P. 32(f), this brief contains 6,638 words and 732 lines of text.

__________________________
Jennifer L. Markowski

Date: 03/04/2026

**CERTIFICATE OF SERVICE**

I hereby certify, under the penalties of perjury, that on March 4, 2026, I have made service of this Brief upon the attorney of record for Plaintiff-Appellant by email and/or electronic filing on:

Joseph L. Sulman
Law Office of Joseph L. Sulman
255 Bear Hill Road, Suite 204
Waltham, MA 02451
jsulman@sulmanlaw.com

_______________________________________
Jennifer L. Markowski, BBO No. 655927
Freeman, Mathis & Gary, LLP
One Boston Place
201 Washington Street, Suite 2200
Boston, MA 02108
jennifer.markowski@fmglaw.com