**UNITED STATES COURT OF APPEALS**
**FOR THE FIRST CIRCUIT**

**No. 25-2109**

---

TRACY GRYGIEL,

Plaintiff – Appellant,
v.

HEALTHEQUITY, INC,

Defendant – Appellee

---

On Appeal From A Judgment and Order of the District Court for the District of Massachusetts

---

**REPLY BRIEF OF THE PLAINTIFF/APPELLANT, TRACY GRYGIEL**

---

PLAINTIFF-APPELLANT TRACY GRYGIEL
Joseph L. Sulman, BBO #115200
Law Office of Joseph L. Sulman, Esq.
255 Bear Hill Road, Suite 204
Waltham, MA 02451
617) 521-8600
jsulman@sulmanlaw.com

Date: April 3, 2026

# TABLE OF CONTENTS


TABLE OF AUTHORITIES .......... 3

ARGUMENT .......... 4

1. The District Court Stated, But Did Not Correctly Apply, The Plausibility Standard .......... 4

2. The Defendant Fails To Adequately Address The Chapter 151B Retaliation Claim .......... 10

3. The Complaint Adequately Alleges A Specific Public Policy Under Count VI .......... 12

CONCLUSION .......... 16

# TABLE OF AUTHORITIES

## CASES

A.*G. v. Elsevier, Inc.*, 732 F.3d 77 (1st Cir. 2013)............ 5
*Allder v. Daniel O'Connell's Sons*, 20 F. Supp. 2d 210 (D. Mass. 1998) ............................................... 6
*Calandro v. Sedgwick Claims Mgmt. Servs.*, 919 F.3d 26 (1st Cir. 2019) ............................................... 4
*Candelario del Moral v. UBS Fin. Servs.*, 699 F.3d 93 (1st Cir. 2012) ............................................... 11
*Deangelis v. Hasbro, Inc.*, 165 F.4th 646 (1st Cir. 2026)....... 5
*Doe v. City of Bos.*, 165 F.4th 630 (1st Cir. 2026)............ 10
*El Dia, Inc. v. Rossello*, 165 F.3d 106 (1st Cir. 1999)......... 9
*Grajales v. P.R. Ports Auth.*, 682 F.3d 40 (1st Cir. 2012)...... 6
*Maldonado-González v. P.R. Aqueduct & Sewer Auth.*, 158 F.4th 27 (1st Cir. 2025) ............................................. 13
*Meehan v. Med. Info. Tech., Inc.*, 488 Mass. 730 (2021)........ 15
*Ocasio-Hernandez v. Fortuño-Burset*, 640 F.3d 1 (1st Cir. 2011) 5, 8
*Rios-Jimenez v. Principi*, 520 F.3d 31 (1st Cir. 2008).......... 6
*Rodríguez-Cardi v. MMM Holdings, Inc.*, 936 F.3d 40 (1st Cir. 2019) ............................................... 10
*Sepúlveda-Villarini v. Dep't of Educ. of P.R.*, 628 F.3d 25 (1st Cir. 2010) ............................................. 8
*Straughn v. Delta Air Lines, Inc.*, 250 F.3d 23 (1st Cir. 2001). 6
*Verdrager v. Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C.*, 474 Mass. 382 (2016) ....................................... 11

## STATUTES

Health Information Technology for Economic and Clinical Health Act, 42 USC § 1395 ........................................ 13
Health Insurance Portability and Accountability Act, 45 C.F.R § 164 ................................................. 13
Health Insurance Portability and Accountability Act, 45 C.F.R. § 160 .............................................. 12, 13
Uniformed Service and Employment and Reemployment Rights Act, 38 U.S.C. § 4301 ......................................... 11

## RULES

Fed.R.Civ.P 12(b)(6) ......................................... 13
Fed.R.Civ.P 56(c) ............................................ 6

## ARGUMENT

### 1. The District Court Stated, But Did Not Correctly Apply, The Plausibility Standard.

Defendant emphasizes that the district court *articulated* the plausibility standard correctly in its decision. App. Br. at 15, n. 2 ("The District Court judge's Memorandum and Order clearly articulates that Grygiel need not plead facts sufficient to establish a prima facie case at the pleading stage using the plausibility standard."). Grygiel does not dispute this, but "actions sometimes speak louder than words." *Calandro v. Sedgwick Claims Mgmt. Servs.*, 919 F.3d 26, 40 (1st Cir. 2019) (finding that district court applied the correct objective standard in evaluating bad faith insurance claim even though not articulated in decision). The central basis for this appeal is that the district court did not *apply* the plausibility standard faithfully with precedent. Defendant's argument in defense of the decision simply underscores the district court's misstep.

As this Court has explained, when district courts review a motion to dismiss, "the complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." *Ocasio-Hernandez v. Fortuño-Burset*, 640 F.3d 1, 14 (1st Cir. 2011).[1] Yet Defendant spends its

[1] Ocasio-Hernandez was a First Amendment political discrimination case, but its reasoning applies with equal force here. *See Deangelis v. Hasbro, Inc.*, 165 F.4th 646, 653 (1st Cir. 2026)

principal brief addressing each specific assertion individually in the Complaint rather than the allegations *in toto*. App. Br. at 17-18. As this Court has explained, "[n]o single allegation need lead to the conclusion . . . of some necessary element [of a Title VII claim] provided that, in sum, the allegations of the complaint make the claim as a whole at least plausible." *Ocasio-Hernandez*, 640 F.3d at 15. Like in *Ocasio-Foster*, "the district court erred when it failed to evaluate the cumulative effect of the factual allegations." *Id.*

For example, the fact that discriminatory conduct by Grygiel's coworkers may not, by itself, be "probative of the ultimate question of discrimination," App Br. at 17, does not eliminate these well-stated factual allegation from consideration where they help show the "cumulative effect" of the discrimination, *Ocasio-Hernandez*, 640 F.3d at 15; *A.G. v. Elsevier, Inc.*, 732 F.3d 77, 82 (1st Cir. 2013) ("[I]t is neither necessary nor desirable to balkanize the plausibility standard element by element. To pass through the plausibility screen, a complaint does not have to evince a one-to-one relationship between any single allegation and a necessary element of the cause of action.").

---

(applying *Ocasio-Hernandez* to reverse dismissal of Title VII retaliation claim).

Unintentionally, Defendant demonstrates the low plausibility threshold when it relies exclusively on summary judgment decisions in arguing that stray remarks and comments from non-decision-makers are not probative of discrimination. App. Br. at 18-19, *citing Rios-Jimenez v. Principi*, 520 F.3d 31 (1st Cir. 2008), *Straughn v. Delta Air Lines, Inc.*, 250 F.3d 23 (1st Cir. 2001), *Allder v. Daniel O'Connell's Sons*, 20 F. Supp. 2d 210 (D. Mass. 1998). At the pleading stage, a plaintiff does not need to show any particular type of evidence, unlike when a party defends against a motion for summary judgment, but only "enough facts to raise a reasonable expectation that discovery will *reveal evidence of the illegal conduct." Grajales v. P.R. Ports Auth*., 682 F.3d 40, 49 (1st Cir. 2012) (emphasis added). *Compare* Fed.R.Civ.P. 56(c).[2]

---

[2] Fed.R.Civ.P. 56(c) requires a party who:

> [A]ssert[s] that a fact cannot be or is genuinely disputed [to] support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;
>
> or

Defendant's failure to correctly apply the plausibility standard continues with its argument that the allegations concerning Easterly – Grygiel's supervisor - are "conclusory and lack any suggestion of gender-based animus." App. Br. at 19. Grygiel was the only female IT employee under Easterly, App. 13, which she alleged explicitly was a basis for his "dismissive condescension and hostility" when she "provid[ed] [him] with critical, highly knowledgeable negative feedback about security concerns that [he] had long neglected to adequately address," App. 15-16. She further alleged that Easterly issued her first PIP because he and another supervisor "were upset that Grygiel, a woman, found problems that they had not." *Id.* at 18.

These are not mere "conclusory allegations" about the Defendant's motives. While the complaint does not contain direct evidence of the Defendant's gender-based motives, none are required; the allegations taken as a whole provide circumstantial evidence that raise Grygiel's right to relief above a speculative level. This is true even after "identifying and disregarding statements in the complaint that merely offer

---

> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

legal conclusions couched as fact or threadbare recitals of the elements of a cause of action.” *Ocasio-Hernandez*, 640 F.3d at 12. An allegation that Easterly placed Grygiel on a PIP because she was “a woman [who] found problems that they had not” does not offer “threadbare legal conclusions” when considering the cumulative circumstantial facts in the complaint.

Similarly, Defendant’s argument that comments by Griggs – the Chief Human Resources Officer – to Grygiel that she is a “know-it-all” and won’t “stay in your lane” are not “gender-specific” misses the mark at the Rule 12(b)(6) stage. The appropriate question is whether such comments, in combination with other facts in the Complaint, could allow a jury to find gender discrimination assuming the alleged facts as true. *See Sepúlveda-Villarini v. Dep't of Educ. of P.R.*, 628 F.3d 25, 30 (1st Cir. 2010) (explaining that *Twombly* “cautioned against thinking of plausibility as a standard of likely success on the merits; the standard is plausibility assuming the pleaded facts to be true and read in a plaintiff's favor.”).

The “cumulative” facts show that Grygiel was the *only* female IT specialist under Easterly, she was told to stay in her lane by the Director of Human Resources, she was called a “token” women by someone else working for the Defendant, and then Easterly places her on a PIP – these specific, non-

conclusory facts plausibly allow an inference that the reason for her being placed on the PIP was because of her gender.

To defend against these allegations, Defendant makes an unsupported assertion that "a chief criticism of Grygiel was that she worked on tasks that were not assigned to her and did not listen to the perspectives of others." App. Br. at 18. Defendant does not cite anywhere in the record for this assertion. *Id.*; *See El Dia, Inc. v. Rossello*, 165 F.3d 106, 110 (1st Cir. 1999) ("In assessing whether a Fed R. Civ. P. 12(b)(6) motion was properly denied, we confine our analysis to the pleadings, as did the district court.") The Court cannot consider these unsupported assertions by Defendant.

Finally, Defendant argues a "same actor inference" by contending that "Grygiel alleges that Mr. Easterly gave her positive feedback after he interviewed and hired her, knowing she was a member of a protected class (a woman)," and cites to ¶17 of the Complaint. App. Br. at 20. Yet ¶17 of the Complaint alleges no such thing.[3] In fact, Grygiel nowhere alleges that Easterly was involved in her hiring. App. 12, ¶8 ("HealthEquity hired Grygiel as a Senior Data Architect in in [sic] May

[3] Paragraph 17 of the Complaint states, in full: "For example, rather than assigning unique credentials to each user who required access to the Database, HealthEquity used shared login accounts for multiple users, secured only with widely-shared passwords that were not regularly changed or updated." App. 14.

2023.”); *Rodríguez-Cardi v. MMM Holdings, Inc.*, 936 F.3d 40, 46 (1st Cir. 2019) (explaining that same actor inference requires “the hirer and the firer” to be the same individual). Defendant concocts this fantasy out of whole cloth.

**2. The Defendant Fails To Adequately Address The Chapter 151B Retaliation Claim.**

The arguments raised by Defendant on the Chapter 151B retaliation claim chiefly addresses the causal connection element. App. Br. at 26. According to Defendant, since HealthEquity did not know that Grygiel’s self-help discovery was protected conduct under Massachusetts law, her claim must fail. *Id.* at 26-27. This reasoning misunderstands the knowledge required to establish causal connection in a retaliation claim.

A plaintiff claiming retaliation for engaging in protected conduct needs to show that the defendant knew that she engaged in conduct protected by law; she does not need to show that the defendant knew the conduct was lawfully protected. *See Doe v. City of Bos.*, 165 F.4th 630, 637 (1st Cir. 2026) (retaliation requires proof that the decisionmaker knew of the plaintiff's protected conduct when he or she decided to take the adverse employment action). So, for example, an employer that discharges an employee because he takes a leave of absence for military service is not immune from liability because it is unaware of the Uniformed Service and Employment and Reemployment Rights

Act, 38 U.S.C. §§ 4301, et seq, so long as it knew the employee took military leave. Such a requirement would add an additional hurdle to a civil rights claim that the law does not require. Here, it is enough that Defendant knew that Grygiel engaged in the conduct protected under the Supreme Judicial Court's decision in *Verdrager v. Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C.*, 474 Mass. 382 (2016).

Defendant further alleges that Grygiel's self-help discovery actions were not reasonable without citing any record or legal support. App. Br. at 25. In fact, Grygiel alleges specifically in her Complaint that "[n]one of these emails Grygiel sent to her personal email address contained confidential company information." App. 13, ¶84. *See Candelario del Moral v. UBS Fin. Servs.*, 699 F.3d 93, 105 (1st Cir. 2012) ("[Because the facts here admit of more than one inference concerning the reasonableness of [defendant's] conduct, the reasonableness issue must go to the jury."). Further, Defendant asserts incorrectly that it "determined that [Grygiel violated the Company's Security and People Policy", App Br. at 25, but this is not an established fact. As previously explained in Grygiel's Principal Brief at 14, Grygiel alleged only that Defendant told her that "[she] was being terminated due to HealthEquity's determination" that she violated these policies. She further alleged that "HealthEquity conveniently exploited,

deliberately misconstrued, and exaggerated Grygiel's self-help discovery efforts as alleged policy violations." App. 25, ¶86.

### 3. The Complaint Adequately Alleges A Specific Public Policy Under Count VI.

Defendant argues that the district court's dismissal of the claim of wrongful termination in violation of public policy under Count VI should be affirmed by offering a narrow construction of Grygiel's public policy claim. According to Defendant, Grygiel alleges that she "was fired because in June 2023 . . . she identified and reported security concerns of HealthEquity that, if unremedied, she alleges could have brought HealthEquity's out of compliance with HIPAA's Security and Privacy Rules." App. Br. at 29-30, *citing* App. 16-17, ¶34-36. Then Defendant cites to a specific regulation of HIPAA, 45 C.F.R. § 160.316, to narrowly limit Grygiel's claim and asserts, without support, that HealthEquity is not a "Covered Entity under HIPAA "as to its products and services." App. Br. at 31. These additional facts and assertions are improper and unavailing.

First, Grygiel alleged numerous facts about HIPAA and HealthEquity that Defendant simply ignores. Grygiel alleged that as part of its services, "HealthEquity receives, maintains, preserves, and transmits Protected Health Information and Electronic Protected Health Information (together, "PHI") of

individual customers as well as individuals associated with or employed by HealthEquity customers.” App. 12, ¶6. Grygiel further alleged that because of this, “HealthEquity is required to operate in compliance with state and federal privacy laws to protect PHI, including but not limited to the federal Health Insurance Portability and Accountability Act ("HIPAA"), the HIPAA Privacy Rule and HIPAA Security Rule, (both, 45 CFR §160 and §164), and the Health Information Technology for Economic and Clinical Health Act (“HITECH”) (42 USC §1395w-4(o)(2)).” Grygiel specifically alleged that HealthEquity is a “covered entity” under HIPAA. App. 16, ¶32. These facts are accepted as true for purposes of Rule 12(b)(6). *See Maldonado-González v. P.R. Aqueduct & Sewer Auth.*, 158 F.4th 27, 31 (1st Cir. 2025) (motion to dismiss based on Rule 12(b)(6) requires assuming well-pleaded facts as true and drawing inferences in non-moving party’s favor). In its brief, HealthEquity only asserts in a footnote without citation that “contrary to Plaintiff’s allegation (Appendix, 16 at ¶32), HealthEquity is not a HIPAA Covered Entity as to its products and services.” App. Br. 30, n. 4. Grygiel has no way to respond to this unsupported assertion, nor does the Appeals Court.[4]

[4] Although not part of the record, the assertion by Defendant that HealthEquity does not need to comply with HIPAA appears contrary to the authorization forms available on its own website.

Second, while Grygiel did not cite to any specific HIPAA statutory provision in her Complaint, she explicitly alleged that her duties involved ensuring Defendant's "compliance with HIPAA's collective, comprehensive, and specific requirements for the privacy and security of [protected health information] data that HealthEquity received, created, maintained, or transmitted incident to the services it provides for its customers." App. 16, ¶6. This is precisely what HIPAA protects. https://www.hhs.gov/hipaa/for-professionals/privacy/index.html.

> The HIPAA Privacy Rule establishes national standards to protect individuals' medical records and other individually identifiable health information (collectively defined as "protected health information") and applies to health plans, health care clearinghouses, and those health care providers that conduct certain health care transactions electronically. The Rule requires appropriate safeguards to protect the privacy of protected health information and sets limits and conditions on the uses and disclosures that may be made of such information without an individual's authorization.

*Id.*

Grygiel alleged that the concerns that she raised could have brought HealthEquity out of compliance with HIPAA's Security Rule and Privacy Rule. She therefore alleged that she brought concerns to Defendant about a public policy – a

---

https://help.healthequity.com/en/articles/5748935-hipaa-authorization-form.

"national standard[] to protect individuals' medical records and other individually identifiable health information" – that she believed could be violated if the security concerns she found were not addressed. She further alleged that "[a]fterward, and continuing throughout her employment, the Defendant retaliated against [her] because she had reported the significant security and privacy issues." App. 17, ¶37. This states a claim for unlawful discharge in violation of public policy. *See Meehan v. Med. Info. Tech., Inc.*, 488 Mass. 730, 733 (2021) (supporting wrongful discharge in violation of public policy under personnel records statute, c. 149, § 52C even without private cause of action).

## CONCLUSION

For the foregoing reasons and the reasons in Appellant's Principal Brief, the Court should reverse the district court's Order of Dismissal of October 31, 2025 and Memorandum and Order of October 14, 2025.

Respectfully submitted,
PLAINTIFF TRACY GRYGIEL,
By her attorneys,

/s/ Joseph Sulman
Joseph L. Sulman, BBO #663635
Law Office of Joseph L. Sulman
255 Bear Hill Road, Suite 204
Waltham, MA 02451
(617) 521-8600
jsulman@sulmanlaw.com

April 3, 2026

CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 32(A)(7)(B)

I hereby certify that this document complies with the requirements under Local Rule 32(A)(7)(B) and has 2,520 words, excluding the Table of Contents, Table of Authorities, Certificate of Compliance, and Addendum.

I also certify that this brief complies with the typeface requirements of Fed.R.App.P. 32(a)(5) and the type-style requirements of Fed.R.App.P. 32(a)(6) because this brief has been prepared in a proportionate type spaced Courier New Font using Microsoft Word 365 and 12-point font.

/s/ Joseph L. Sulman
Joseph Sulman

April 3, 2026

CERTIFICATE OF SERVICE

I hereby certify that I served a copy of this document, with the addendum, on counsel for Defendants-Appellants via the Court's Electronic Filing System on April 3, 2026.

/s/ Joseph L. Sulman
Joseph Sulman

April 3, 2026.